WILLIAM N. LARKIN ET AL. *v.* DOMINICK J. BONTATIBUS ET AL.

DALY, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued June 3—decided July 24, 1958

*T. Holmes Bracken,* with whom, on the brief, was *Alfred E. DeCapua,* for the appellants (defendants Milici et al.).

*John W. Barnett,* with whom, on the brief, was *Frank E. Callahan,* for the appellees (plaintiffs).

MURPHY, J. This is an appeal by all of the defendants, except the selectmen of the town of Branford, from a judgment of the Court of Common Pleas in New Haven County declaring that a district organized for municipal purposes under the provisions of chapter 35 of the General Statutes, as amended, must comprise a single, self-contained area and may not comprise two or more noncontiguous areas, and also that Blackstone Associates, a district organized by these defendants, is not a validly formed and lawful district.

Hotchkiss Grove is in the Pine Orchard West section of Branford, fronting on Blackstone Bay, an inlet of Long Island Sound. In 1914, it was subdivided into lots by E. M. Hotchkiss, and in 1921 he filed a map of the property in the town clerk's office. In 1923, some of the residents organized The Hotchkiss Grove Association, Inc., a nonstock corporation. On or about June 27, 1956, the plaintiffs and other electors and taxpayers of the town of Branford submitted a petition to the selectmen requesting them to call a meeting of all the electors residing in Hotchkiss Grove east of Seventh Avenue and the northerly prolongation thereof, for the purpose of organizing a municipal district as provided by §§ 340d and 341d of the 1955 Cumulative Supplement. The called meeting was enjoined at the instance of other residents because of insufficient public notice. Thereupon, on July 11 and 12, the plaintiffs and other electors and taxpayers submitted another petition for the same territorial district and purposes. For convenience, they will be called the Hotchkiss Grove group. On the same dates, the defendants who have been referred to, and others associated with them, submitted a similar petition to the selectmen for the organization of a different district in Hotchkiss Grove, but for the same purposes as those set forth in the Hotchkiss petitions. They will hereinafter be referred to as the defendants or as the Blackstone group. The selectmen called the Hotchkiss meeting for August 8 and the Blackstone meeting for August 9. The Hotchkiss meeting was again enjoined in a suit instituted by some residents of the Blackstone area, on the ground that the Blackstone meeting should have been noticed first. The Blackstone group then conducted its meeting as scheduled, voted to estab-

lish a district with the limits described in their petition, named the district "Blackstone Associates," and elected officers.

The district embraced within the limits described in the Hotchkiss petitions is a self-contained area extending from Seventh Avenue and its northerly prolongation, on the west, to Dudley Avenue, Stony Creek Highway and the westerly boundary of property now or formerly of Ralph Blackstone, on the east. The district embraced within the limits of Blackstone Associates lies entirely within the area delineated in the Hotchkiss petitions. It is not self-contained but consists of one large area in the northeast corner of Hotchkiss Grove and three small separate areas, two of which are in the southeastern part, and one, made up of four lots, in the southwestern part. None of them are adjacent or contiguous to the others. Roughly, their total area is about one-third that of the district proposed by the Hotchkiss Grove group.

The two plaintiffs are electors and taxpayers in Branford. They were signers of both the June and the July petitions of the Hotchkiss Grove group. Under the provisions of General Statutes § 7827, they brought this action for a declaratory judgment on behalf of themselves and the thirty-five other signers of the Hotchkiss petitions who were also electors and taxpayers. The original defendants were the selectmen of the town and Salvatore F. Milici and Esther D. Milici. The latter were sued individually and as representatives of their co-signers on the Blackstone petition. On September 21, 1956, the plaintiffs filed an amended complaint. Blackstone Associates and its officers were then cited in as additional parties defendant, and orders of notice of the pending action were issued to each

of the forty-nine signers of the Blackstone petition. The defendant Esther Milici is a defendant both individually and as secretary of Blackstone Associates. The citation and notice sufficed to give the court jurisdiction of all interested parties. General Statutes § 7827. Incidentally, one of the Blackstone petitioners to whom notice was issued had also signed a Hotchkiss petition. It does not appear whether he was neutral under the circumstances. At least, Fourth Avenue, on which he lives, is not within the area embraced in the Blackstone petition.

The case was submitted to the court on an oral stipulation which was read into the record. The parties agreed on certain changes in, and additions to, the amended complaint. These should, but do not, appear in the printed record. Practice Book § 421. Counsel should have discovered the omission upon receipt of the record and should have filed a motion to correct it. Practice Book § 423. Most of the allegations of the complaint were admitted by the defendants. The others raised questions of law for the court. Arguments were submitted on briefs.

The defendants are not entitled to any material corrections in the finding. It is their contention that the plaintiffs have no interest which entitles them to a declaratory judgment. The plaintiffs are joint owners of real property in Hotchkiss Grove and electors and taxpayers in the town of Branford. As stated, they brought suit on behalf of themselves and the other signers of the Hotchkiss petitions. Most of the owners of real property in Hotchkiss Grove have rights of way in common to use certain private roads and a private beach. Among other purposes, Blackstone Associates was organized "to construct and maintain roads, sidewalks, crosswalks, drains and sewers [and] to appoint and

employ watchmen, or police officers." To construct a sewer that would service the disjointed areas in Blackstone Associates, it would be necessary to utilize roads which are outside the limits of that district and in which the Hotchkiss petitioners have easements. As General Statutes § 768, in effect when this action was brought and tried, gave a municipal district the right to condemn land required for its purposes, it cannot be said that the plaintiffs and those associated with them did not have such rights and jural relations as to entitle them to maintain this action. Practice Book §§ 276, 277.

"The remedy by means of declaratory judgments is highly remedial and the statute and rules should be accorded a liberal construction to carry out the purposes underlying such judgments. One great purpose is to enable parties to have their differences authoritatively settled in advance of any claimed invasion of rights, that they may guide their actions accordingly and often may be able to keep them within lawful bounds, and so avoid the expense, bitterness of feeling and disturbance of the orderly pursuits of life which are so often the incidents of law suits. Fully to carry out the purposes intended to be served by such judgments, it is sometimes necessary to determine rights which will arise or become complete only in the contingency of some future happening." *Sigal* v. *Wise,* 114 Conn. 297, 301, 158 A. 891. The provision that there must be an issue in dispute or an uncertainty of legal relations which requires settlement between the parties means no more than that there must appear a sufficient practical need for the determination of the matter. *Connecticut Savings Bank* v. *First National Bank & Trust Co.,* 133 Conn. 403, 409, 51 A.2d 907.

Such is the case here. Furthermore, the defendants assumed the burden of proving their special defense that the court lacked jurisdiction because the plaintiffs had no right or interest subject to adjudication. This they failed to prove.

The only other claim of error which requires discussion relates to the conclusions that a district organized for municipal purposes under chapter 35 of the General Statutes, as amended, must be a self-contained area and not one comprised of two or more noncontiguous areas, and, consequently, that Blackstone Associates is not a validly formed and lawful district. A district established under the provisions of this chapter is a quasi-municipal corporation. 1 McQuillin, Municipal Corporations (3d Ed.) § 2.29. It has the right to lay and collect taxes for the accomplishment of its objects and for improvements within the district. Public Acts 1957, No. 465, § 17, as amended, Spec. Sess., Sept., 1957, No. 6. In effect, it is a body politic within the confines of a larger municipal corporation, the town. Ibid. As such, the limitations upon its extent must be governed by the laws pertaining to municipal corporations. It is the general rule that in the absence of specific statutory mandate, the lands to be incorporated into a municipality must be contiguous, and an attempt to consolidate two distinct, detached tracts of land as corporate territory under one government is unauthorized and void. Antieau, Municipal Corporation Law, § 1.06; *Enterprise* v. *State ex rel. Attorney General,* 29 Fla. 128, 145, 10 So. 740.

"The fundamental conception of a city or village is that it is a collective body of inhabitants, gathered together in one mass, with recognized and well-defined external boundaries which gather the per-

sons inhabiting the area into one body, not separated by remote or disconnected areas. In its territorial extent, the idea of a city, town or village is one of unity and of continuity, not separated or segregated areas." *Hillman* v. *Pocatello*, 74 Idaho 69, 71, 256 P.2d 1072. "[T]he general and almost invariable usage, in this country at least, in the organization of towns and counties, as in precincts, districts, cities and villages, [is to form] them of adjacent and contiguous territory." *Chicago & N.W. Ry. Co.* v. *Oconto*, 50 Wis. 189, 195, 6 N.W. 607. That the legislature did not intend several separated and detached areas to constitute a district is evident from the language of the statute. Cum. Sup. 1955, § 340d; Public Acts 1957, No. 465, § 17 (b). The petition must specify "the limits [boundaries] of a proposed district." The word "a," as used, means "one." Webster's New International Dictionary (2d Ed.). That the legislature meant a single district and not several is also apparent from General Statutes § 770, which provided for the expansion of the boundaries of a municipal district. That could only be accomplished upon petition of a "majority of the legal voters residing within the limits contiguous" to the district. In the instant case, if Blackstone Associates could be construed a legal district, such petitioners, if any, could hardly be from territory contiguous to all four of the areas embraced in the Blackstone petition.

The defendants place great reliance upon *Scoville* v. *Mattoon*, 55 Conn. 144, 10 A. 511, as supporting their claim that separate and disconnected areas may form a municipal district. That case held that the house and farm occupied by the plaintiffs, though a quarter of a mile distant from the line of a school district, had been annexed to the district

in 1808 under the then existing law which gave school societies full power to establish and alter school districts. It further found that since the persons owning and living upon the farm had for over fifty years paid taxes as members of the district, their children had attended the district school, and the named plaintiff had in 1837 and 1838 acted as an officer of the district, the plaintiffs could not, in 1884, successfully attack the annexation under which they had participated and benefited for so many years. Furthermore, that case concerned the annexation of additional territory to a district, which is not the issue involved here. The opinion does not bolster the defendants' case.

The court was not in error in concluding that a district organized for municipal purposes under the provisions of chapter 35 of the General Statutes, as amended by §§ 340d and 341d of the 1955 Cumulative Supplement, must comprise a single self-contained area and not comprise two or more non-contiguous areas, and that therefore Blackstone Associates was not a validly formed and lawful district.

It is to be observed that since the trial of this case the provisions of all of the sections of chapter 35 which controlled the establishment of a municipal district in 1956 have been repealed and new legislation has been adopted. Public Acts 1957, Nos. 13, 465; Spec. Sess., Sept., 1957, No. 6.

There is no error.

In this opinion the other judges concurred.